UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KATHERINE R.[1],

                      Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

1:20-CV-01055-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 14)

Plaintiff Katherine R. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion (Dkt. No. 11) is denied and the Commissioner's motion (Dkt. No. 12) is granted.

---

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only her first name and last initial.

## BACKGROUND[2]

On July 28, 2016, plaintiff filed for DIB and SSI, alleging disability beginning June 20, 2016. (*See* Tr. 167-78)[3] Plaintiff's disability benefits application was initially denied on March 22, 2017. (Tr. 75-76, 99-107) On April 5, 2017, plaintiff timely filed a written request for a hearing. (Tr. 109-10) A hearing was held before Administrative Law Judge Bonnie Hannan ("the ALJ") on January 22, 2019. (Tr. 29-73) Plaintiff, who was represented by counsel, testified at the hearing. (*Id.*) The ALJ also received testimony from Vocational Expert Sharon D. Ringenberg ("the VE"). (*Id.*) On May 28, 2019, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 9-23) The Appeals Council denied plaintiff's request for review of the ALJ's determination on April 22, 2020, and this action followed. (Tr. 1-6)

Born on August 25, 1960, plaintiff was 55 years old on the alleged onset date. (Tr. 167) Plaintiff graduated high school and has past work experience as a retail clerk, a fast-food worker, a front desk clerk, and a bus monitor. (Tr. 23, 212-13)

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks

---

[2] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[3] References to "Tr." are to the administrative record in this case.

2

and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

3

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.*

4

As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.*

5

If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ first found that plaintiff meets the insured status requirements of the Act through June 30, 2021. (Tr. 14) The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 20, 2016. (*Id.*) At step two, the ALJ found that plaintiff has the severe impairments of obesity; diabetes mellitus; hypertension; rheumatoid arthritis; severe right shoulder degenerative joint disease; and mild left shoulder degenerative joint disease. (*Id.* at 14-16) Also at step two, the ALJ found that plaintiff's "medically determinable impairments of claustrophobia, generalized anxiety disorder, and depressive disorder, considered singularly and in combination, do not cause more than minimal limitation in the [her] ability to perform basic mental work activities and therefore are non-severe." (*Id.* at 15) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 17) Before proceeding to step four, the ALJ found that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can push and/or pull as much as she can lift and/or carry. She can occasionally reach overhead to the right. She can occasionally climb ramps and stairs, stoop,

kneel, crouch and crawl. She can frequently balance. She can never climb ladders, ropers, or scaffolds.

(Tr. 18-23) Proceeding to step four, the ALJ found that plaintiff was capable of performing her past relevant work as a retail clerk and a front desk clerk. (Tr. 23-24) The ALJ elected not to make an alternative step five finding. (*Id.*) The ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, from June 20, 2016 through the date of the decision. (Tr. 24)

### Plaintiff's Challenges

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ conceded that the medical opinion evidence was vague but failed to clarify it, and because the ALJ erroneously interpreted raw medical data and relied on her own lay judgment in crafting the RFC. (*See* Dkt. No. 11 (Plaintiff's Memo. of Law)) For the following reasons, the Court disagrees.

The RFC determination is "the most [a claimant] can do despite [her] limitations," and is based upon a holistic review of all relevant evidence in the case record, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). Thus, an ALJ's formulation of the RFC is not derived solely from medical opinion evidence. Instead, an ALJ must consider the record as a whole. In fact, the Commissioner's regulations specifically require an ALJ to assess a claimant's RFC "based on all the relevant evidence in [the claimant's] case record," and further explain that such evidence includes objective medical evidence (*i.e.*, medical signs or laboratory findings), medical opinions, medical history, clinical findings, prescribed treatment, and the claimant's own descriptions of his or her limitations. *See* 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5). Moreover, the Second Circuit has explicitly instructed that

7

"[a]lthough the ALJ's conclusions may not perfectly correspond with any of the opinions of medical sources cited in [her] decision, [she] [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ is further entitled to consider all of the evidence presented and to resolve any conflicts in the record when creating the RFC assessment. *Veino*, 312 F.3d at 588.

After reviewing the relevant portions of the record together with the detailed decision rendered here, the Court finds that the ALJ correctly considered all pertinent evidence, including the medical treatment notes, clinical findings, medical opinion evidence, and non-medical evidence, and appropriately determined that plaintiff retained an RFC to perform a reduced range of light work with some additional postural and manipulative restrictions. (Tr. 18) In formulating the RFC, the ALJ acknowledged that plaintiff complained of widespread pain to her primary care treatment providers at Mercy Comprehensive Care Center ("Mercy"). (Tr. 19; *referring to* Tr. 319, 328, 336, 403, 594-95, 598-99). The ALJ also considered: (1) x-rays showing degenerative joint disease in plaintiff's bilateral shoulders (severe in the right shoulder, mild in the left shoulder); (2) treatment notes from providers documenting plaintiff's body mass index from 37 to 40, and (3) some clinical deficits including tenderness in plaintiff's lumbar spine and crepitus in her knees. (Tr. 19; *referring to* Tr. 420) The ALJ went on to conclude that while these clinical findings indicate that plaintiff possesses some physical limitations which affect her ability to work, those limitations would not preclude plaintiff from performing light work with some additional manipulative restrictions as to pushing, pulling and right overhead reaching, as well as some additional postural restrictions as to climbing, stooping,

kneeling, crouching, crawling, and balancing. In support of this determination, the ALJ noted that plaintiff's treatment providers at Mercy found that she has no gross motor or sensory deficits; a well-preserved lumbar range of motion; and unremarkable diabetic foot examinations. (Tr. 19; *referring to* Tr. 319, 328, 336, 403) The ALJ further cited reports from plaintiff's rheumatologist, Dr. Danilo Saldana, who found that while plaintiff has some tenderness and reduced range of motion in her shoulders, she possesses an otherwise full range of motion in her elbows, hips, knees, and ankles, as well as no soft tissue swelling or effusion. (Tr. 19; *referring to* Tr. 382, 385) The ALJ also considered the findings of Dr. Najmul Khan, a primary care physician who treated plaintiff in March and April of 2017. (Tr. 20; *referring to* Tr. 567-72) Dr. Kahn found plaintiff's back exam to be unremarkable and observed that plaintiff looked well; had no gross motor or sensory deficits; and possessed a normal range of motion in all joints. (Tr. 20; *referring to* Tr. 568, 571)

In addition to relying on findings from treatment providers when formulating the RFC, the ALJ also considered the clinical findings of Dr. Hongbiao Liu, a consultative examiner who performed an internal medical examination of plaintiff on February 13, 2017. (Tr. 19-20, *referring to* Tr. 506-09) As acknowledged by the ALJ, Dr. Liu found that plaintiff had a normal gait and stance; used no assistive devices; needed no assistance in changing for the exam or getting on and off the exam table; and was able to rise from the chair without difficulty. (*Id.*) The ALJ further took into account Dr. Liu's findings of a reduced range of motion in plaintiff's lumbar spine and right shoulder, and, in addition, Dr. Liu's findings of full range of motion in plaintiff's left shoulder, hips, knees, and ankles bilaterally, as well as full strength, sensation, and reflexes. (Tr. 19; *referring to* Tr. 508).

9

The ALJ also appropriately considered non-medical evidence in the record when formulating the RFC for light work with some additional postural and manipulative restrictions. The ALJ noted that plaintiff did not seek or follow-through with potential treatments, including chiropractic care, steroid injections, and the use of a transcutaneous nerve stimulator (TENS) unit. (Tr. 20) Moreover, plaintiff refused a recommended shoulder surgery and did not regularly attend physical therapy sessions as prescribed. (Tr. 330, 506) The ALJ logically reasoned that plaintiff's conservative course of treatment was inconsistent with a level of severity that would preclude plaintiff from sustaining any work activity. *See Doln v. Berryhill*, 17 Civ. 4202, 2018 U.S. Dist. LEXIS 124674 (SDNY July 24, 2018) (ALJ entitled to consider plaintiff's conservative treatment regime in formulating the RFC); *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) ("The ALJ properly took into consideration plaintiff's conservative treatment as additional evidence supporting his determination."). Likewise, the ALJ noted that plaintiff's reported activities of daily living, including driving, shopping, cooking, cleaning, attending medical appointments, and managing her personal hygiene and grooming, all supported her ability to engage in light work with some additional physical limitations. (Tr. 21; *referring to* 319, 328, 336, 382, 385, 403, 508, 568). *See e.g.,* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *Ewing v. Comm'r of Soc. Sec.*, 17-CV-68S, 2018 U.S. Dist. LEXIS 197905 (WDNY Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.").

10

The Court rejects plaintiff's argument that the ALJ erred by characterizing the medical opinion evidence as "vague" and then failing to further develop or clarify the record. Dr. D. Miller, a state agency review consultant, opined that plaintiff could: (1) occasionally lift 20 pounds; (2) frequently lift 10 pounds; (3) stand and/or walk for about 6 hours in an 8-hour workday; (4) sit for about 6 hours in an 8-hour workday; and (5) had an unlimited ability to push and pull. (Tr. 83) Dr. Miller further concluded that plaintiff could perform light work but was limited in right overhead reaching, and that plaintiff could occasionally climb ramps and stairs; frequently stoop; occasionally kneel; and frequently crawl. (Tr. 83-85) The ALJ gave partial weight to Dr. Miller's opinion because it was generally consistent with the other evidence in the record, including plaintiff's normal sensory and motor examinations and conservative course of medical treatment. (*Id.* at 21) However, the ALJ's concluded that Dr. Miller's assessment that claimant could occasionally climb ladders, ropes, and scaffolds; frequently stoop and crawl; and balance without limitation was inconsistent with plaintiff's morbid obesity as well as her decreased range of lumbar spine and right shoulder movement. (*Id.*) Thus, the ALJ proceeded to assign *greater* postural limitations to the RFC than those assessed by Dr. Miller. *See Threatt v. Comm'r of Soc. Sec.*, 19-CV-25, 2020 U.S. Dist. LEXIS 136369 (WDNY July 31, 2020) (where the ALJ's RFC assessment is more restrictive than the medical opinions of record, it is generally not a basis for remand). The ALJ also noted that Dr. Miller's assessment that plaintiff was limited in her ability to reach overhead to the right was vague because it did not specify a degree of limitation (*i.e.*, frequent, occasional, etc.). (*Id.*) However, in formulating the RFC, the ALJ both incorporated Dr. Miller's right reaching restriction and further specified, based on other evidence in the record, that plaintiff was

11

limited to only occasional overhead reaching on the right. As discussed in detail above, the ALJ's reaching assessment was supported by substantial evidence in the record, including the medical imaging; clinical examination findings; reports of plaintiff's full upper extremity strength and grip strength; and her report of daily activities. (Tr. 21; *referring to* Tr, 38, 50, 59, 221-22, 223, 382, 385, 403, 508, 608) "While the ALJ may not use 'raw evidence' in making her determination, when there is other evidence supporting the ALJ's assessment in the record, and the ALJ's determination is more favorable to plaintiff, any error would be harmless." *See Bradley W. Comm'r of Soc. Sec.*, 5:19-CV-1217, 2020 U.S. Dist. LEXIS 182214 (NDNY Oct. 1, 2020) For these reasons, the Court finds no error with respect to the ALJ's assessment of Dr. Miller's opinion.

Consultative examiner Dr. Liu opined that plaintiff has moderate limitation for lifting, carrying, and overhead reaching with her right hand, as well as mild to moderate limitation for prolonged walking, bending, and kneeling. (Tr. 509) The ALJ credited Dr. Liu's opinion in so far as she agreed that "plaintiff's history of decreased and painful range of right shoulder motion, morbid obesity and joint pain would reasonably cause limitations in her ability to lift, carry, reach overheard on the right, walk, bend and kneel." (Tr. 21) However, the ALJ assigned "partial weight" to the opinion because Dr. Liu's use of the terms "mild" and "moderate" were "vague" and "not well defined." (*Id.*) Plaintiff contends that by referring to Dr. Liu's opinion as vague, the ALJ acknowledged that the opinion was not helpful for purposes of analyzing plaintiff's ability to work, and that the "ALJ went on to engage in clear interpretation of medical data." The Court disagrees. First, courts within this Circuit have consistently held that mild and moderate limitations, such as those assessed by Dr. Liu, are consistent with an RFC for light work. *See e.g., White v. Berryhill,*

753 F. App'x 80 (2d Cir. 2019) (finding consultative examiner's assessment of moderate limitations supported a modified light RFC); *Taylor v. Astrue*, 32 F. Supp. 3d 253 (NDNY 2012) (doctor's assessment, including his opinion that plaintiff had a moderate limitation in walking, provided support for the ALJ's RFC finding that plaintiff could stand/walk/sit for about six hours in an eight-hour workday); *Amons v. Astrue*, 617 F. Supp. 2d 173, 176 (WDNY 2009) (examining physician's opinion that plaintiff had moderate limitations in walking, standing, squatting, climbing and reaching supported ALJ's determination that plaintiff could perform a full range of light work with some fingering, reaching, and environmental limitations); *Jordan v. Comm'r of Soc. Sec.*, 16-CV-9634, 2018 U.S. Dist. LEXIS 44123 (SDNY Mar. 19, 2018) (citing cases and stating that courts in this Circuit "have found that 'moderate' limitations for standing, walking, sitting, and lifting are consistent with the ability to do light work."); *Gurney v. Colvin*, 14-CV-688, 2016 WL 805405 at *3 (WDNY March 2, 2016) (collecting cases and finding an opinion of moderate limitations with lifting, carrying, bending, reaching, pushing and pulling, was consistent with an RFC for light work).

Moreover, Dr. Liu's opinion was supported by an examination of plaintiff as well as a thorough report of findings. The opinion was also consistent with the other evidence in the record, both medical and non-medical. Indeed, a consultative examiner's use of the terms "mild" or "moderate" is not impermissibly vague when the opinion is supposed by a physical examination and an assessment which is consistent with the record as a whole. *See Susan B. v. Comm'r of Soc. Sec.*, 1:20-CV-00546, 2021 U.S. Dist. LEXIS 143320 (WDNY July 30, 2021); *Baker v. Berryhill*, 1:15-CV-00943, 2018 U.S. Dist. LEXIS 36509 (WDNY Mar. 6, 2018) (examiner's use of the terms mild and moderate were not so vague

13

that the source statement could not serve as an adequate basis for the RFC assessment, where examiner performed a thorough examination of claimant, noted modest abnormalities, and his conclusions were consistent with the medical evidence in the record). Likewise, the RFC here was consistent with Dr. Liu's assessment of plaintiff's physical limitations, and both the RFC and Dr. Liu's opinion were consistent with other medical and non-medical evidence in the record. Thus, the ALJ's reference to Dr. Liu's opinion as "vague" did not necessitate clarification of the record, nor is it a basis for remand.

In sum, the Court finds the RFC to be well-supported, and that the ALJ fully accounted for all of plaintiff's limitations which were bore out by the record. Indeed, this is not situation in which the ALJ failed to refer to the medical opinions in the record or based the RFC on either minimal objective findings or her own lay judgment. Instead, the ALJ's RFC findings were supported by substantial evidence, including the opinions of Dr. Liu and Dr. Miller; treatment notes and records from plaintiff's various treating physicians; medical imaging and clinical examinations; records showing plaintiff's relatively conservative treatment; and plaintiff reported activities of daily living. It is plaintiff's burden to prove that her RFC is more restricted than that found by the ALJ, whereas the Commissioner need only show that the ALJ's decision was supported by substantial evidence in the record. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). Further, it is not enough for plaintiff to point to some evidence in the record that could support her position; rather, she must show that "no reasonable factfinder" could have drawn the same conclusions as the ALJ based upon the evidence. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). While plaintiff may disagree with the ALJ's RFC finding,

she has not shown that she was more physically restricted than assessed by the RFC nor has she demonstrated that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record as to plaintiff's physical impairments.

Plaintiff also argues that the RFC was not supported by substantial evidence because the ALJ failed to include any mental limitations and therefore did not consider the impact of all plaintiff's conditions, whether severe or non-severe. (See Dkt. No. 11 (Plaintiff's Memo. of Law)) For the following reasons, the Court disagrees.

In February of 2017, consultative examiner Susan Santarpia, Ph.D., diagnosed plaintiff with claustrophobia, generalized anxiety disorder, and depressive disorder. (Tr. 500) Following a mental health examination, Dr. Santarpia concluded that plaintiff was able to follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; relate adequately with others; and appropriately deal with stress within normal limits. (Id. at 503) Dr. Santarpia assessed only a mild impairment in plaintiff's ability to perform complex tasks independently and make appropriate decisions. (Id.) Dr. Santarpia indicated that while plaintiff's symptoms were consistent with some psychiatric problems, they did not appear to be significant enough to interfere with plaintiff's ability to function on a daily basis. (Id.) Also in February 2017, A. Dipeolu, Ph.D., a state agency consultant, reviewed the medical records and similarly concluded that plaintiff's mental impairments were not severe. (Tr. 79-82) Specifically, Dr. Dipeolu concluded that plaintiff had no more than mild limitations in (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing herself. (Id.)

15

At step two of her sequential analysis, the ALJ acknowledged that plaintiff was diagnosed with claustrophobia, anxiety, and depression. (Tr. 15-16) The ALJ proceeded to consider these impairments in light of the four broad areas of mental functioning set forth in the regulations, known as the "paragraph B" criteria. (Tr. 15; 20 CFR, Part 404, Subpart P, Appendix 1). Consistent with the opinion of Dr. Dipeolu, the ALJ concluded that plaintiff had (1) mild limitations in understanding, remembering or applying information; (2) mild limitations in interacting with others; (3) mild limitations in concentration; and (4) mild limitations in adapting or managing herself.[4] (Tr. 15-16) However, because plaintiff's mental impairments caused no more than mild limitations in any of the paragraph B criteria, the ALJ appropriately concluded, at step two of the sequential analysis, that plaintiff's mental impairments were non-severe. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1); SSR 85-28, 1985 WL 56856, *3-4 (S.S.A. Jan. 1, 1985) (An impairment is "not severe" if the medical evidence establishes only a slight abnormality or combination of abnormalities which do not significantly limit the claimant's ability to perform work-related activities.); *Wilkins v. Comm'r of Soc. Sec.*, 18-CV-67, 2019 U.S. Dist. LEXIS 100486 (WDNY June 17, 2019) (an examiner's opinion that plaintiff has a mild limitations in an area is consistent with a finding of non-severity.)

Even though the ALJ reasonably concluded that plaintiff's mental limitations were non-severe, plaintiff is correct that the ALJ was still required to consider those limitations when formulating the RFC. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (Regulations and case law are clear that an RFC determination must account for

---

[4] The ALJ assessed greater mental limitations than those found by Dr. Santarpia. Specifically, while Dr. Santarpia found that plaintiff had only a mild limitation in one area of mental functioning, the ALJ found that plaintiff had a mild limitation in each of the four areas of mental functioning listed in the paragraph b criteria.

16

limitations imposed by both and non-severe impairments.) Indeed, the ALJ properly followed this directive here. Specifically, the ALJ's step two analysis discussed plaintiff's abilities within each of the four paragraph B areas of mental functioning in detail and with citations to the record. (Tr. 15-16) The ALJ then specifically indicated that her RFC assessment "reflects the degree of limitations [she] has found in the 'paragraph b' function analysis." (Tr. 16) Additionally, the ALJ's RFC analysis contained a separate, detailed discussion of plaintiff's mental limitations and their effect on her ability to perform substantial gainful activity. (Tr. 22-23) This discussion included the ALJ's evaluation of the opinions of Dr. Dipeolu and Dr. Santarpia, as well as citations to other medical as well as non-medical evidence in the record which supported the finding that plaintiff possessed no more than mild limitations in any area of mental functioning. (*Id.*) Thus, contrary to plaintiff's argument, it is clear that the ALJ fully considered plaintiff's mental limitations in fashioning the RFC. *Jane M.A. v. Comm'r of Soc. Sec.*, 19-CV-808, 2021 U.S. Dist. LEXIS 3085 (WDNY Jan. 7, 2021) ("The ALJ clearly considered plaintiff's non-severe mental impairments in the later steps of the sequential analysis as evidenced by his comprehensive review of plaintiff's mental health records.").

Lastly, the ALJ's decision not to include any mental limitations in the RFC was supported by substantial evidence. Dr. Santarpia, whose opinion was partially credited by the ALJ, observed plaintiff to have a cooperative demeanor; an adequate manner of relating and overall presentation; a well-groomed appearance; normal motor behavior; appropriate eye contact; fluent and clear speech; coherent and goal-directed thought-process; full-range and appropriate affect; euthymic mood; intact attention and concentration; intact memory; average intelligence; and fair insight and judgment. (Tr. 15-

16, 22; *referring to* Tr. 501-02) The ALJ noted that Dr. Santarpia's findings of mostly normal mental functioning were consistent with other evidence in the record, including plaintiff's ability to remember three out of three objects immediately and after a delay; complete simple mathematical calculations; perform serial subtraction exercises; follow the plot-lines of day-time soap operas; manage her own money; drive; cook; shop for groceries; attend appointments; and maintain a relationship with her son. (Tr. 16, 22) The ALJ also considered the fact that while plaintiff's primary care doctor had prescribed psychiatrist medications, plaintiff never sought treatment with a mental health specialist. (Tr. 318, 324, 331, 336, 500, 299-643) The ALJ further noted that findings from the mental status examinations in the record were relatively benign. (Tr. 22) This record evidence was also consistent with Dr. Dipeolu's determination that plaintiff had no more than mild limitations in any area of mental functioning. (*Id.*) Where, as here, an ALJ's findings of only mild limitations in mental functioning are supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC. *See Lynett W. v. Comm'r of Soc. Sec.*, 19-CV-1168, 2021 WL 868625, at *4 (WDNY Mar. 9, 2021) (finding "mild limitations do not necessarily require the addition of mental limitations in the RFC"); *Jane M.A.*, 2021 U.S. Dist. LEXIS 3085 (remand denied where the "ALJ properly evaluated the mental impairments at Step Two and reasonably considered such impairments at subsequent steps and accordingly found the mild limitations resulting from the non-severe impairments did not warrant any mental restrictions in the RFC.").

In sum, the ALJ correctly considered both plaintiff's severe and non-severe limitations when fashioning the RFC, and the ALJ's decision not to include any mental

18

limitations in the RFC was supported by substantial evidence in the record. Thus, plaintiff's arguments concerning her mental impairments do not require remand.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of the Court shall take all necessary steps to close the case.

**SO ORDERED.**

Dated:     November 29, 2021
           Buffalo, New York

_/s/ Michael J. Roemer_
MICHAEL J. ROEMER
United States Magistrate Judge